UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| BUTCH S.,[1] | |
| Plaintiff, | Case No. 4:21-CV-00405-BLW-DKG |
| v. | **REPORT AND RECOMMENDATION** |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security Administration,[2] | |
| Defendant. | |

## INTRODUCTION

Plaintiff filed a Complaint with this Court seeking judicial review of the

Commissioner's denial of his application for disability and disability insurance benefits.

(Dkt. 1.) The matter has been referred to the undersigned Magistrate Judge pursuant to 28

U.S.C. § 636(b)(1)(A), and is fully briefed. (Dkt. 15, 18.)[3] Having carefully reviewed the

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Kilolo Kijakazi is substituted for Andrew Saul pursuant to Federal Rule of Civil Procedure 25(d). Kijakazi became the Acting Commissioner of the Social Security Administration on July 9, 2021.

[3] Plaintiff did not file a reply brief and the time for doing so has passed. (Dkt. 3); Fed. R. Civ. P., Supp. R. 8 of Soc. Sec. under 42 U.S.C. § 405(g) (effective Dec. 1, 2022) (Plaintiff may serve and file a reply brief within 14 days after service of the Commissioner's brief.).

**REPORT AND RECOMMENDATION - 1**

parties' memoranda and the entire administrative record (AR), the Court will recommend that the decision of the Commissioner be reversed and remanded for the reasons set forth below.

## BACKGROUND

On January 21, 2020, Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits alleging disability beginning on May 1, 2015. (AR 13, 166.) Plaintiff meets the insured status requirements through December 31, 2020. The application was denied initially and on reconsideration.

A hearing was conducted on February 11, 2021, before Administrative Law Judge (ALJ) David Willis.[4] After considering testimony from Plaintiff and a vocational expert, on May 5, 2021, the ALJ issued a written decision finding Plaintiff not disabled. (AR 13-25.) The Appeals Council denied Plaintiff's request for review, making the ALJ's decision final. *See* 42 U.S.C. § 405(h). Plaintiff timely filed this action seeking judicial review of the ALJ's decision. (Dkt. 1.) The Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

At the time of the alleged disability onset date, Plaintiff was thirty-two years of age. (AR 70, 166.) Plaintiff is a high school graduate with one year of college education. (AR 24, 185.) Plaintiff served in the United States Army from 2001 to 2005, and has past relevant work experience as a security guard. (AR 24, 166, 185.) Plaintiff claims he is unable to work due to back pain, right knee and ankle pain, right kidney problems, and

---

[4] The hearing was conducted telephonically due to the Coronavirus Pandemic of 2019. (AR 13.)

migraine headaches. (AR 184.)

## THE ALJ DECISION

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential process in determining whether a person is disabled or continues to be disabled within the meaning of the Social Security Act (SSA). *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1594.

Here, at step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (AR 16.) At step two, the ALJ determined Plaintiff suffers from the following medically determinable severe impairments: degenerative disc disease, degenerative joint disease, right lower extremity dysfunction, diabetes mellitus, migraines, and obesity. (AR 16.) The ALJ further concluded that Plaintiff's right perinephric kidney hematoma and multiple knee surgeries were not separate medically determinable impairments. (AR 16.) Further, the ALJ found Plaintiff's mental impairments of anxiety, depression, and posttraumatic stress disorder (PTSD), considered singularly and in combination, were nonsevere impairments. (AR 16-17.)

At step three, the ALJ determined that, through the date last insured, Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. (AR 17-19.)

The ALJ next found Plaintiff retained the residual functional capacity (RFC) for

sedentary work as defined in 20 C.F.R. § 404.1567(a), with the following limitations: he can lift/carry and push/pull ten pounds frequently, and less than ten pounds occasionally; he can stand for two hours, walk for two hours, and sit for six hours; he can frequently reach overhead to the left, reach frequently to the right; he can handle items frequently with the right hand, but has limited fingering with the right hand; he can occasionally climb ramps and stairs, balance, stoop, kneel crouch, and crawl, but can never climb ladders, ropes, or scaffolds; and he can never work at unprotected heights, around moving parts, and in vibration. (AR 19.) At step four, the ALJ concluded Plaintiff was unable to perform his past relevant work as a security guard. (AR 24.)

Relying upon testimony from the vocational expert, the ALJ concluded at step five that jobs exist in significant numbers in the national economy that Plaintiff can perform given his age, education, work experience, and RFC, such as: surveillance system monitor, charge account clerk, and addresser. (AR 24-25.) The ALJ therefore determined Plaintiff was not disabled.

## ISSUES FOR REVIEW[5]

1. Whether the ALJ properly considered all the relevant medical evidence relating to Plaintiff's mental impairments?

2. Whether the ALJ properly considered Plaintiff's statements?

3. Whether the ALJ properly evaluated the medical opinion evidence?

---

[5] The Court has reordered the issues from that of the parties to coincide with the five step sequential evaluation process and to address the issues in the same order as they arise in the ALJ's decision.

**REPORT AND RECOMMENDATION - 4**

## STANDARD OF REVIEW

The Court must uphold an ALJ's decision unless: 1) the decision is based on legal error, or 2) the decision is not supported by substantial evidence. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla, but less than a preponderance of evidence. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

In making its determination, the Court considers the administrative record as a whole, weighing both the evidence that supports, and the evidence that does not support, the ALJ's conclusion. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014). The Court considers only the reasoning and actual findings identified by the ALJ and may not affirm for a different reason or based on post hoc rationalizations attempting to infer what the ALJ may have concluded. *Id.* at 1010; *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009).

If the ALJ's decision is based on a rational interpretation of conflicting evidence, the Court must uphold the ALJ's finding. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008). The Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999). The Court will not reverse the ALJ's decision if it is based on harmless error, which exists where the error is "inconsequential to the ultimate nondisability determination, or if despite the legal error, the agency's path may reasonably be discerned." *Brown-Hunter v. Colvin*,

806 F.3d 487, 492 (9th Cir. 2015) (internal marks and citations omitted); *see also Molina v. Astrue*, 674 F.3d 1104, 1117–1122 (9th Cir. 2012).

## DISCUSSION

### 1.   ALJ's Consideration of Plaintiff's Mental Impairments

### A.   Legal Standard

Where there is evidence of a mental impairment, the ALJ must follow a two-step "special technique" at steps two and three to determine whether the claimant's impairment or combination of impairments is severe. *Keyser v. Comm'r of Soc. Sec. Admin.*, 648 F.3d 721, 725 (9th Cir. 2001); 20 C.F.R. § 404.1520a. First, the ALJ must evaluate the claimant's "pertinent symptoms, signs, and laboratory findings to determine whether [he or she has] a medically determinable impairment." 20 C.F.R. § 404.1520a(b)(1). Second, the ALJ must assess and rate the "degree of functional limitation resulting from [the claimant's] impairments" in four broad areas of functioning: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. 20 C.F.R. § 404.1520a(b)(2)-(c)(4).

"Assessment of functional limitations is a complex and highly individualized process that requires [the SSA] to consider multiple issues and all relevant evidence to obtain a longitudinal picture of [a claimant's] overall degree of functional limitation." 20 C.F.R. § 404.1520a(c)(1). Functional limitation is measured on a five-point scale: none, mild, moderate, marked, and extreme. 20 C.F.R. § 404.1520a(c)(4). If limitation is found to be "none" or "mild," the impairment is generally considered to not be severe. 20

C.F.R. § 404.1520a(d)(1). If the impairment is severe, the ALJ proceeds to determine whether the impairment meets or is equivalent in severity to a listed mental disorder at step three. 20 C.F.R. § 404.1520a(d)(2)-(3).

### B.    Analysis

Here, the ALJ concluded at step two that Plaintiff's anxiety, depression, and PTSD were nonsevere impairments. (AR 16-17.) Specifically, the ALJ found Plaintiff had mild limitations in all four broad functional areas. (AR 17.) At step two of the sequential evaluation process, the ALJ must determine whether the claimant suffers from a severe medically determinable impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), (c). A severe impairment is one that "significantly limits the claimant's 'physical or mental ability to do basic work activities.'" *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020) (quoting 20 C.F.R. § 404.1522(a)).

On review, Plaintiff argues the ALJ erred by failing to consider evidence relevant to the severity of his mental impairments. (Dkt. 15.) Namely, a June 29, 2017 medical note describing an incident where Plaintiff became upset and angry during an emergency room visit and threw his ankle brace at the physician, and another incident where Plaintiff called the clinic with a profanity laden message following an MRI. (Dkt. 15 at 18-19.) The ALJ did not address the June 29, 2017 record in his decision.[6] Plaintiff contends this

---

[6] Plaintiff further argues the state agency consultants did not address the emergency room incident in their review, despite acknowledging other records showing Plaintiff was irritable and displayed anger. (Dkt. 15 at 18-19.) To the extent Plaintiff's argument assigns error to the state agency consultants' opinions and the ALJs finding that the opinions were persuasive, the Court finds otherwise. The state agency consultants specified in their reports that their review of the record was from the date of the prior denial, September 12, 2017, going forward. (AR 75, 92.)

record, coupled with other medical evidence showing Plaintiff was irritable with a tendency toward anger, demonstrate that his mental impairments cause more than mild limitations in his ability to adapt and manage himself and interact with others.

Defendant maintains the ALJ reasonably found Plaintiff's mental conditions caused only mild limitations in all four functional areas based on the entire record. (Dkt. 18 at 11-13.)[7] Defendant argues the June 29, 2017 record relied on by Plaintiff is insufficient to undermine the several other records cited by the ALJ that reported largely unremarkable mental status examination findings.

After carefully reviewing the entire record, the Court finds no error in the ALJ's evaluation of Plaintiff's mental impairments. The ALJ's finding that Plaintiff's mental conditions were not severe is supported by substantial evidence.

The ALJ found that despite endorsing a history of mental health conditions, Plaintiff largely characterized his mental conditions as "secondary to factors such as financial stress and subjective pain," and "inconsistently denied anxiety, depression, or

_____

Thus, the June 29, 2017 record preceded the records reviewed by the state agency consultants. In any event, the consultants did review and consider records reporting Plaintiff was irritable and angry, but also reported that Plaintiff was cooperative, neutral in mood, and displayed appropriate affect. (AR 76, 80-81, 92-94.) The Court finds no error in the fact that the consultants did not address the particular record identified by Plaintiff, given the records reviewed by the consultants were more recent and supported the consultants' opinions.

[7] Defendant asserts that this issue relates to the ALJ's step three determination. (Dkt. 18 at 2, 11-12.) Step three addresses whether an impairment meets or equals one of the listings. 20 C.F.R. § 404.1520(a)(4)(iii). However, the ALJ considered Plaintiff's mental impairments only at step two, finding they were nonsevere. (AR 16-17.) Thus, Plaintiff's challenge to the ALJ's consideration of his mental impairments relates to the step two findings. (Dkt. 15 at 17-19.) This discrepancy is noted only for clarification, as it does not impact the outcome of the Court's decision given the special technique for evaluating the severity of a mental impairment is the same at both steps two and three.

**REPORT AND RECOMMENDATION - 8**

memory loss at other examinations." (AR 17.) The records cited by the ALJ support this

conclusion. (AR 287) (reporting on June 8, 2017 that Plaintiff described his pain as

making him angry and reported his stress level to be high due to bills and not being able

to do things); (AR 1007, 1009, 1016, 1098, 1126) (reporting in July and March 2020,

Plaintiff denies anxiety, depression, or memory loss).

The ALJ further identified treatment notes describing Plaintiff with "intact

memory, adequate concentration, a logical and goal directed thought process, as calm and

cooperative, with intact form and content of thought, and with no suicidality, even while

endorsing ongoing symptoms, and being described as irritable." (AR 17) (citing 24F/120,

124, 135, 154, 173-174.)[8] These records support the ALJ's determination that Plaintiff's

mental impairments caused only mild limitations, particularly as to the two functional

areas Plaintiff contests on review - ability to interact with others and adapt or manage

oneself.

For instance, the ALJ cited a mental health note dated October 28, 2020, where

Plaintiff reported his chronic pain remains the prominent symptom and is directly

proportional to the severity of his depression. (AR 17.) The record contained a mental

---

[8] The ALJ's citation to exhibit 24F appears to be a typographical error. (AR 17, 23.) Exhibit 24F
is a four page treatment note. (AR 1014-1018.) However, the ALJ's page citations to the exhibit
exceed one hundred – 120, 124, 135, 154, 173-174. The content and page numbers of the ALJ's
citations instead coincide with Exhibit 34F, which are records from the Department of Veterans
Affairs provided following the hearing. (AR 31, 1366-1556.) Defendant's briefing appears to
conclude similarly. (Dkt. 18 at 12.) Accordingly, the Court will address the records cited by the
ALJ as "[Exhibit] 24F/120, 124, 135, 154, 173-174," to be the records contained in Exhibit 34F
at the page numbers identified by the ALJ as follows: AR 1489, 1493, 1504, 1523, 1542-1543.

status exam reporting Plaintiff's behavior was calm and cooperative; mood was depressed and in pain; content of thought was absent evidence of disorder; form of thought was logical, linear, and goal directed; cognition demonstrated adequate concentration; memory was intact; judgment was fair; and suicidality was "vehemently" denied. (AR 1489.) These findings are consistent with other mental status exams and objective mental health findings contained throughout the record. (AR 1485, 1500, 1519, 1521, 1524, 1529) (reporting Plaintiff was alert and attentive appropriate, mood was congruent, denied suicidal ideation). Therefore, the Court finds the ALJ's conclusion that Plaintiff's mental health impairments caused mild limitations in all of the functional areas is supported by substantial evidence in the record.

While the ALJ did not specifically address the June 29, 2017 record that Plaintiff relies on or otherwise discuss the emergency room and MRI incidents, the ALJ did recognize there were records reporting that Plaintiff experienced ongoing mental health symptoms and was described as "irritable." (AR 17.) Thus, the ALJ did not ignore relevant evidence. Rather, the ALJ properly addressed and considered a range of relevant evidence to obtain a longitudinal picture of Plaintiff's overall degree of functional limitations as required by the regulations. 20 C.F.R. § 404.1520a(c)(1).

The ALJ accurately discussed the records relevant to Plaintiff's mental health impairments and reasonably concluded that Plaintiff had mild limitations in all four functional areas. The isolated record Plaintiff relies on does not undermine the records cited by the ALJ demonstrating Plaintiff's overall mental health limitations were no more than mild. Rather, the objective evidence cited by the ALJ demonstrates that Plaintiff

generally had normal behavior, mood, affect, orientation, memory, judgment, insight, intelligence, perception, speech, and thoughts, although he reported experiencing depression, anxiety, anger, and irritability related primarily to chronic pain as well as other life factors.

Plaintiff does not identify any other evidence in support of the argument that the ALJ failed to consider all of the objective evidence.[9] Further, there are no medical opinions in the record concluding that Plaintiff's mental impairments caused more than mild limitations. Plaintiff also did not allege disability due to his mental impairments in his application for benefits, and did not testify that he had any specific limitations due to his mental impairments. (AR 41, 43-57, 184.) Thus, Plaintiff has not met his burden to demonstrate the ALJ harmfully erred at step two and is not entitled to remand on this ground.

In sum, because substantial evidence supports the ALJ's finding that Plaintiff had no more than mild limitations in all four of the broad areas of mental functioning, the Court finds that the ALJ did not err by rating Plaintiff's mental impairments as not severe. 20 C.F.R. § 404.1520a(d)(1).

## 2.    ALJ's Consideration of Plaintiff's Symptom Statements

### A.    Legal Standard

---

[9] The Court's own review revealed other records reporting Plaintiff experienced instances of anger. *See e.g.*, (AR 1545, 1547-48.) The Court has not relied on these other records in its review of the ALJ's decision here because neither the ALJ nor Plaintiff cite these particular reports. Regardless, the descriptions of anger experienced by Plaintiff are similar throughout all of the records and, therefore, would not change the Court's reasoning as stated herein.

The ALJ engages in a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id*. (quoting *Garrison*, 759 F.3d at 1014-15; 20 C.F.R. § 404.1529 (Mar. 27, 2017)).

If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ may discredit the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. *Trevizo*, 871 F.3d at 678; *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010). It is "not sufficient for the ALJ to make only general findings; he [or she] must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). These reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995).

When evaluating the intensity and persistence of symptoms, the ALJ must consider all of the evidence in the record. *See* SSR 16-3p (March 16, 2016), 2016 WL 1119029 at *1-2.  The ALJ is directed to examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id*. at *4.

**REPORT AND RECOMMENDATION - 12**

The Commissioner recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id*. at *6-7.

### B.    Plaintiff's Statements and the ALJ's Decision

Plaintiff submitted a Functional Report stating, as relevant here, that reading for twenty minutes and "just about everything" will cause massive pain or trigger a migraine. (AR 215.)[10] On February 25, 2020, Plaintiff completed a headache questionnaire stating he began experiencing headaches in 2004, which occur daily. (AR 213.) During the February 11, 2021 hearing, Plaintiff testified to having migraines about two to three times a week. (AR 54.)

The ALJ found Plaintiff's statements concerning the intensity, persistence, and

---

[10] Plaintiff only challenges the ALJ's evaluation of his statements related to migraine headaches. (Dkt. 15 at 19-21.) Thus, any other contentions of error related to his symptom statements are waived. The Court will discuss only the issues properly raised for review by Plaintiff. *Carmickle*, 533 F.3d at 1161 n.2 ("[W]e ordinarily will not consider matters on appeal that are not specifically and distinctly argued in an appellant's opening brief.").

limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record. (AR 20.) Specifically, the ALJ found Plaintiff's statements were "inconsistent because while the record does reflect that the claimant has a history of joint and back issues, it also supports that he retains significant residual functioning, despite his conditions." (AR 20.) As to Plaintiff's statements related to migraines, the ALJ found "supporting evidence of this condition is limited," stating:

> The claimant's migraines have primarily been only sporadically self-reported, though he was prescribed an Emgality solution after reporting failing multiple other medications. (Ex. 2F, 3; 7F, 85; 25F, 30). However, the claimant has also inconsistently denied headaches at other examinations. (Ex. 7F, 46; 16F, 2). Further, the claimant has related that his migraines started while he was in the military in the early 2000's, which significantly predates his alleged onset date. (Ex. 34F, 134).

(AR 22.) On review, Plaintiff argues the ALJ failed to provide clear and convincing reasons to discredit his statements concerning migraines. (Dkt. 15 at 19-21.) Rather, Plaintiff asserts his statements concerning the frequency and severity of his headaches, while varied, were consistent given migraines can become more severe and frequent over time. (AR 15 at 21.) Further, Plaintiff contends the fact that he experienced migraines before the relevant time period was not a clear and convincing reason to discredit his statements. Defendant, on the other hand, argues the ALJ pointed to affirmative evidence of malingering and provided other valid reasons to reject Plaintiff's allegations of migraine headaches. (Dkt. 18 at 4-7.)

## C.    Analysis

Here, the Court finds the ALJ did not expressly find affirmative evidence of malingering in relation to Plaintiff's statements about his migraine headaches, contrary to

Defendant's assertion. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir.

2009) (requiring "affirmative evidence" of malingering); *Flores v. Comm'r of Soc. Sec.*,

237 F. App'x 251, 252–53 (9th Cir. 2007) ("[A]n ALJ may reject a claimant's subjective

pain testimony if the record contains affirmative evidence of malingering." (citation

omitted)); *cf. Austin v. Saul*, 818 F. App'x 725, 728 (9th Cir. 2020) (noting that

"unexplained notation" by doctor of "signs of malingering" was not affirmative

evidence).[11]

      In discussing the symptom statements, the ALJ twice identified a June 8, 2017

record where the examining physician reported that Plaintiff's "physical exam is quite

exaggerated as [Plaintiff] exaggerates every physical exam test and every test is painful."

(AR 20, 21) (citing AR 288.) However, the ALJ's mentions of the record reporting that

Plaintiff had "exaggerated" his physical exam were made in relation to his discussion of

Plaintiff's complaints of lower extremity pain and back pain, not migraine headaches.

(AR 20-21) (citing AR 288.) Thus, the references to the June 8, 2017 record were not

affirmative findings or affirmative evidence of malingering relevant to Plaintiff's

statements concerning migraine headaches such that the ALJ could reject Plaintiff's

---

[11] It is an open question in the Ninth Circuit as to whether the ALJ must make a specific
affirmative finding of malingering or if affirmative evidence of malingering in the record is
sufficient to abrogate the requirement that the ALJ provide clear and convincing reasons for
discrediting a claimant's statements. *See Sengsourignet v. Comm'r of Soc. Sec.*, No. 1:20-cv-
01834-SAB, 2022 WL 2307190, at *16 (E.D. Cal. June 27, 2022) (collecting cases); *compare
Austin v. Saul*, 818 F. App'x 725, 728 (9th Cir. Jul. 22, 2020) (declining to "equate a claimant's
possible exaggerations regarding the severity of his symptoms with affirmative evidence of
malingering" where the ALJ appeared to reject that interpretation). Here, neither an affirmative
finding nor affirmative evidence was shown in relation to Plaintiff's statements about his
migraine headaches.

testimony on the basis of malingering alone. *Valentine*, 574 F.3d at 693; *Carmickle*, 533 F.3d at 1160 (clear and convincing standard does not apply when there is affirmative evidence of malingering).

Defendant's argument to the contrary on this point is a post hoc rationalization which the Court may not consider. *See Orn*, 495 F.3d at 630 (The Court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [she] did not rely."); *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006) (The Court cannot affirm the ALJ's decision on grounds not invoked by the Commissioner.). Therefore, the ALJ was required to provide clear and convincing reasons for discrediting Plaintiff's statements regarding the severity of his migraine symptoms. *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (as amended) (citing *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014)). Here, the ALJ identified three reasons. (AR 22.)

First, the ALJ concluded the evidence supporting the alleged history of migraines was "limited," as reports of migraines have primarily been only sporadically self-reported but recognized that Plaintiff was prescribed Emgality solution after other medications failed. (AR 22.) The ALJ cites three records in support of this conclusion. A February 2018 internal medical consultation for psychiatric and chronic pain issues where Plaintiff reported experiencing migraines and was directed to use migraine Excedrin. (AR 313.) A December 2019 emergency department note where Plaintiff presented with chest pain and shortness of breath, and also complained of a migraine headache "that is more

frequent." (AR 681.) Finally, a July 27, 2020 progress note where Plaintiff presented with a right shoulder injury after falling and complained of chronic migraines. (AR 1047.) During the July 27, 2020 appointment, Plaintiff was prescribed an Emgality solution auto-injector to be taken monthly to address his migraines after other medications failed.

When viewed in its entirety, the Court finds the record does not support the ALJ's conclusion that Plaintiff's reported history of migraine headaches was "limited." (AR 22.) Rather, treatment notes and other medical records consistently listed migraines as an active problem and reported medications were prescribed for migraine prevention. *See e.g.*, (AR 681, 741, 782, 796, 858, 1126, 1139, 1371, 1376, 1381-82, 1484-85, 1489, 1492, 1530, 1532, 1537-38, 1546, 1549-50). Further, some records reflect that Plaintiff reported worsening and daily migraines on February 18, 2020 and May 27, 2020. (AR 1521) (psychological consultation); (AR 1546) (Dr. Butler's primary care provider patient note). The three records cited by the ALJ likewise demonstrate that Plaintiff reported a history of migraines between 2018 and 2020. Thus, the ALJ's conclusion that Plaintiff's history of migraines was "limited" and had "primarily been only sporadically self-reported" is unsupported by the record. Therefore, this was not a clear and convincing reason to discredit Plaintiff's statements. (AR 22.)

Second, the ALJ found Plaintiff inconsistently denied headaches at other examinations. (AR 22.) The records cited on this point are two emergency department notes, one from March 2019, where Plaintiff presented with back pain and back muscle spasms occurring after lifting a hot tub, and a second from June 2020, where Plaintiff presented with chronic abdominal pain and renal hematoma. (AR 642, 897.) During these

appointments, Plaintiff reported "no headache" during the review of neurologic symptoms and the past medical history obtained did not include a history of migraines. However, a careful review of these records reveals that they do not support the ALJ's conclusion that Plaintiff inconsistently denied headaches.

While the two records are absent reports of migraines, when read in their entirety, the records were clearly limited to addressing Plaintiff's acute problems occurring at the time of the two emergency department visits for back pain and spasms, and chronic abdominal pain. Not migraine headaches. Instead, as discussed above, the medical record reflects that Plaintiff consistently reported experiencing migraine headaches and was prescribed migraine medications. Thus, the fact that Plaintiff may have reported "no headaches" during these two emergency room visits does not support the ALJ's conclusion that Plaintiff "inconsistently denied headaches." (AR 22.)

Finally, the ALJ observed that Plaintiff reported his migraines stared while he was in the military which significantly predates his alleged onset date, which Plaintiff does not deny. (AR 22.)[12] An ALJ may discount a claimant's testimony based on evidence demonstrating that "the claimant's condition 'ha[d] remained constant for a number of years' and 'ha[d] not prevented [the claimant] from working over that time.'" *Mannion v.*

---

[12] Exhibit 34F does not contain the paginated exhibit numbers usually found in the top righthand corner of the records that ALJs use to cite to the record in their decisions. Thus, deciphering citations to particular pages in Exhibit 34F is somewhat difficult. (AR 22) (citing Ex. 34F/134.) In any event, the ALJ's conclusion concerning when Plaintiff's migraines began is well supported by substantial evidence, as several records in Exhibit 34F report that Plaintiff's migraines started in the military. (AR 1483, 1488, 1499, 1518, 1536.)

*Berryhill*, 772 F. App'x 483, 484 (9th Cir. 2019) (quoting *Gregory v. Bowen*, 844 F.2d 664, 666-67 (9th Cir. 1988)). Here, however, the ALJ did not explain how he determined that Plaintiff's impairment was at the same level of severity before and after the alleged onset date. Nor did the ALJ cite records demonstrating that Plaintiff's condition remained constant. In the absence of some explanation or citation to supporting materials, the Court is unable to conclude this was a clear and convincing reason to discredit Plaintiff's statements that was supported by the record.

For the reasons stated above, the Court finds the ALJ erred in evaluating Plaintiff's symptom statements. The ALJ did not make an affirmative finding of malingering nor identify affirmative evidence of malingering as it relates to Plaintiff's statements concerning his migraine headaches. Further, the ALJ's three reasons for discrediting Plaintiff's migraine statements are not supported by the record.

The error was not harmless. Plaintiff's statements that he experienced frequent migraines suggest additional work limitations beyond those contained in the RFC.[13] Plaintiff statements reflect that he required unscheduled breaks when experiencing a migraine headache. (AR 53) (testifying that he gets migraine headaches two to three times a week that require him to go to his room); (AR 213) (reporting headaches lasting four plus hours to all day, which rendered him unable to perform any activities and he

---

[13] Defendant's argument that the RFC accounts for Plaintiff's migraine allegations is dispelled by the hearing transcript. (Dkt. 18 at 4.) The RFC limitations identified by Defendant - never working at unprotected heights, around moving mechanical parts, or with vibration - were included in the RFC to address Plaintiff's postural limitations. (AR 59.) Not Plaintiff's complaints of migraine headaches.

needed a quiet room with no sound, light, noise, or reading). The vocational expert testified that an individual absent from work one day a month or who is off task more than twenty percent due to needing longer rest breaks is unable to work at full-time employment. (AR 63-64.) Accordingly, the Court cannot confidently conclude that the ALJ would have reached the same disability determination had he properly considered Plaintiff's statements about his migraine headaches. *See Stout*, 454 F.3d at 1055-56. The ALJ therefore committed harmful error in failing to properly evaluate Plaintiff's symptom statements.

In so finding, the Court does not conclude that Plaintiff's subjective statements concerning migraines should be fully credited, or that additional RFC limitations are necessary to account for Plaintiff's migraines. Indeed, there appear to be sounds reasons for not fully crediting Plaintiff's statements about the severity of his migraines. The error here is that the reasons provided by the ALJ are not fully explained or supported by the records cited. On remand, the ALJ should reevaluate Plaintiff's statements and explain the reasons for either including or not including any limitations in the RFC.

### 3.   Medical Opinion Evidence

Plaintiff argues the ALJ failed to properly evaluate the opinions of Mark Butler, M.D. (Dkt. 15.) Defendant maintains the ALJ properly considered the medical opinion evidence as required by the regulations. (Dkt. 18.)

### A.   Legal Standard

Under the regulations governing an ALJ's evaluation of medical opinion evidence for claims filed on or after March 27, 2017, such as here, the ALJ is not required to give

deference to any medical opinion, including treating source opinions. 20 C.F.R. §
404.1520c; *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (ALJs no longer need to
"provide 'specific and legitimate reasons' for rejecting a treating or examining doctor's
opinion."). Instead, the ALJ evaluates the persuasiveness of the opinions based on several
factors. 20 C.F.R. § 404.1520c(a). These are: supportability, consistency, relationship to
the claimant, specialization, and other factors. 20 C.F.R. § 404.1520c(c)(1)-(5). The most
important factors in the evaluation process are supportability and consistency. 20 C.F.R.
§ 404.1520c(b)(2).

"Supportability means the extent to which a medical source supports the medical
opinion by explaining the 'relevant ... objective medical evidence.'" *Woods*, 32 F.4th at
791-792 (quoting 20 C.F.R. § 404.1520c(c)(1)). "Consistency means the extent to which
a medical opinion is 'consistent ... with the evidence from other medical sources and
nonmedical sources in the claim.'" *Id.* (quoting 20 C.F.R. § 404.1520c(c)(2)).

Under this framework, the ALJ is required to articulate how persuasive they find
the evidence and explain how the supportability and consistency factors were considered.
20 C.F.R. § 404.1520c(b)(2). The ALJ may, but is not required to, explain how the other
persuasive factors in paragraphs (c)(3) through (c)(5) were considered. 20 C.F.R. §
404.1520c(b)(2). However, when two or more medical opinions or prior administrative
findings "about the same issue are both equally well-supported ... and consistent with the
record ... but are not exactly the same," the ALJ is required to explain how the other
persuasive factors were considered. 20 C.F.R. § 404.1520c(b)(3). The ALJ's
persuasiveness determination under the revised regulations must be supported by

substantial evidence. *See Woods*, 32 F.4th at 787 ("Now, an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence."). With the above considerations in mind, the Court now turns to the ALJ's evaluation of the medical opinions.

### B.     Mark Butler, M.D.

Butler, Plaintiff's treating physician, provided two statements opining as to Plaintiff's physical impairments and ability to perform work-related activities. (Dkt. 893, 1168-1180.) The first was a letter, dated February 18, 2020, wherein Butler opined that Plaintiff was suffering from multiple medical issues, was having difficulty procuring employment, and would have difficulty being gainfully employed. (AR 893.)

The second were Butler's responses contained in two written questionnaire forms, both dated February 1, 2021. On the first questionnaire form, Butler diagnosed Plaintiff with daily chronic migraines; lumbar and cervical radiculopathy; knee and shoulder impairments; and rage, anger, and agoraphobia. (AR 1169.) Butler opined that Plaintiff could occasionally lift ten pounds; stand and walk for two hours; sit less than two hours; and occasionally handle, but could never perform any other postural or manipulative activities. Butler stated Plaintiff would need to alternate positions frequently and take unscheduled breaks two to four times a day. Butler also concluded Plaintiff must avoid all exposure to environmental restrictions due to agoraphobia; anger issues; and his neck, back, shoulder, and knee pain. (AR 1172-73.) As to his ability to sustain work, Butler opined that Plaintiff was unable to perform any type of work, could sustain work activity for less than two hours per day, and would be absent from work because of pain or other

impairments more than four days each month. On the second questionnaire form, Butler opined that Plaintiff met the listings for major dysfunction of joints and disorders of the spine. (AR 1176-1180.)

The ALJ found Butler's letter not persuasive, as it concerns the ultimate issue of the case and contains no findings regarding Plaintiff's functional limitations. (AR 23.) As to Butler's opinion contained in the questionnaires, the ALJ found it "only partly persuasive," stating:

> The opinion that the claimant is limited to less than the full range of sedentary work is generally persuasive, as it is consistent with the claimant's objectively demonstrated degenerative disc disease, and his remote history of tendon transfer (Ex. 6F, 4; 34F, 67). However, it is not fully consistent with evidence that the claimant was described at some examinations as having an antalgic gait and as using a cane to ambulate, but also at others as able to ambulate without assistance, and having intact strength, sensation, and reflexes (Ex. 7F, 86; 27F[,] 3; 29F, 7). The opinion is additionally inconsistent with notes of at least one of treating doctor, who described the claimant as exaggerating his symptoms, and with a 2020 examination where no significant loss of function was described (Ex. 1F, 2; 12F). Further, this opinion is unsupported by Dr. Butler[']s own treatment notes, where he describes the claimant as having minimal edema, with no obvious signs of pathology (Ex. 30F, 7).

(AR 23.) Plaintiff argues the ALJ erred in failing to address Butler's letter and that the ALJ's evaluation of Butler's opinion in the questionnaires did not satisfy the revised regulations. (Dkt. 15.) Defendant maintains the ALJ reasonably found Butler's opinion only partially persuasive. (Dkt. 18.) For the reasons discussed below, the Court finds error in a portion of the ALJ's evaluation of Butler's opinion.

### C.    Analysis

#### 1.    Butler's Letter and Second Questionnaire Form

The ALJ properly found Butler's letter not persuasive because it opinioned only on the ultimate issue reserved to the Commissioner. (AR 23.)[14] The revised regulations provide that statements on issues reserved to the Commissioner, such as whether an individual is able to work or is disabled, are neither valuable nor persuasive and the ALJ is not required to provide an analysis of how such evidence is considered. 20 C.F.R. § 404.1520b(c). Rather, the ALJ is required to provide an analysis of medical opinions in accordance with 20 C.F.R. § 404.1520c. Medical opinions are statements from medical sources about what a claimant can still do despite their impairments, and whether they have impairment-related limitations or restrictions on their ability to perform physical, mental, and other demands of work activities. 20 C.F.R. § 404.1513(a)(2).

Here, Butler's letter offered no opinion concerning Plaintiff's functional limitations. (AR 893.) Therefore, it was not a "medical opinion" that the ALJ was required to evaluate under the revised regulations. Rather, the letter concerned Plaintiff's ability to procure and maintain employment, which was neither valuable nor persuasive to the disability determination. 20 C.F.R. § 404.1520b(c)(3)(i) (statements that a claimant is or is not able to work, or able to perform regular continuing work are neither valuable nor persuasive). The same is true as to the second questionnaire form containing Butler's opinion that Plaintiff met two of the listings. 20 C.F.R. § 404.1520b(c)(3)(iv) (statements about whether impairments met or medically equal any listing are neither valuable nor

---

[14] The Court disagrees with Plaintiff's contention that the ALJ's evaluations of the letters by Butler and Adam Blakeman, PA-C were inconsistent. (Dkt. 15 at 10 n. 2.) The ALJ correctly concluded the both letters concerned the ultimate issue reserved for the Commissioner and, therefore, he was not required to provide any analysis of either letter. (AR 23.)

persuasive). Thus, the ALJ did not error in his consideration of these materials.

### 2.    Butler's First Questionnaire Form

Turning to Butler's opinion contained in the first questionnaire form, the ALJ discussed the supportability and consistency factors and concluded the opinion was "partially persuasive." (AR 23.) For the reasons that follow, the Court finds the ALJ's evaluation of the supportability factor is without support in the record, but that the ALJ properly evaluated the consistency factor.

The ALJ found Butler's opinion unsupported by his "*own* treatment notes" describing Plaintiff with minimal edema and no obvious signs of pathology. (AR 23) (emphasis added). However, the lone record cited by the ALJ in support of this finding was not signed by Butler. (AR 23) (citing AR 1127)). Rather, the record is a progress note from a follow up visit for right foot drop and ankle pain dated July 14, 2020, and signed by Andrew McCall, DPM. There, McCall found localized edema and foot drop, and referred Plaintiff to a prosthetists for a new AFO.[15] (AR 1127.) Notably, Butler had referred Plaintiff to McCall upon finding Plaintiff needed a new AFO. (AR 1140-41.) Again, however, the record relied on by the ALJ was not one of "Butler's own treatment notes." (AR 23.) The record authored by McCall does not endorse the ALJ's conclusion that Butler's opinions were unsupported by his *own* treatment notes.

In response to this, Defendant argues the Court must look to the ALJ's full explanation and entire decision on review, and that Plaintiff has not identified any

---

[15] "AFO" refers to an "artificial fabricated orthotic" or "ankle foot orthosis." (AR 52.)

examination note by Butler that supports his opinion. (Dkt. 18 at 10.) However, the treatment notes relied on by Defendant to bolster the ALJ's supportability finding were not records cited or relied on by the ALJ in his decision. The Court may not consider Defendant's post hoc rationalizations or affirm the disability decision on grounds not invoked by the ALJ. *Orn*, 495 F.3d at 630; *Stout*, 454 F.3d at 1054.

In any event, the Court has reviewed and considered the ALJ's decision in its entirety and finds the ALJ's explanation of the supportability factor is unreasonable and without support in the record. The ALJ addressed the record by McCall as well as other records relevant to Plaintiff's ankle pain, edema, ability to ambulate, and muscle strength in his discussion of the medical evidence. (AR 21.) However, again, none of the records cited in the ALJ's discussion of the medical evidence were authored by Butler. Indeed, the ALJ's discussion of the medical evidence mirrors his explanation of the persuasiveness factors relevant to Butler's opinion. (AR 21, 23.) Therefore, the ALJ's decision as a whole does not lend support the ALJ's conclusion that Butler's opinion is unsupported by his own treatment notes. For these reasons, the Court finds the ALJ's evaluation of the supportability factor is unsupported by the record.

As to the consistency factor, the ALJ found Butler's opinion that Plaintiff could perform less than the full range of sedentary work to be "generally persuasive" to the extent it is consistent with Plaintiff's objectively demonstrated degenerative disc disease and tendon transfer. (AR 23.) However, the ALJ concluded Butler's opinion was "not fully consistent" with conflicting evidence concerning Plaintiff's ability to ambulate, and with notes reporting Plaintiff exaggerated his symptoms and had no significant loss of

function. (AR 23.)[16] The ALJ further found the opinion "additionally inconsistent" with treatment notes describing Plaintiff as having "exaggerating his symptoms" and with a "2020 examination where no significant loss of function was described." (AR 23.)

Inconsistency can be a valid basis for discrediting opinion evidence where supported by the record. *Woods*, 32 F.4th 792 ("Consistency means the extent to which a medical opinion is 'consistent ... with the evidence from other medical sources and nonmedical sources in the claim.'"). Still, ALJs must provide an explanation supported by substantial evidence of their reasoning when evaluating the persuasiveness factors. *Id.* ("[A]n ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence."); 20 C.F.R. § 404.1520c(b) (The regulations require ALJs to "articulate ... how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors."). The Court considers whether the ALJ's analysis has the support of substantial evidence. 42 U.S.C. § 405(g).

Here, the Court finds the record supports the ALJ's evaluation of the consistency factor. The ALJ cited three records reporting on Plaintiff's ability to ambulate, and having intact strength, sensation, and reflexes. (AR 23) (citing 682, 1098, 1111.) The first record is from an emergency room visit for shortness of breath and migraine headaches dated December 9, 2019, and the second record is a gastroenterology appointment dated

---

[16] The records cited by the ALJ in support of his finding on the consistency factor relevant to Butler's opinion, are the same records the ALJ relies on in concluding that the opinions of the state agency consultants were persuasive. (AR 22-23.) The ALJ also cited the same records in his discussion of the medical record. (AR 20-22.)

**REPORT AND RECOMMENDATION - 27**

July 17, 2020. (AR 682, 1098.) These two records report that Plaintiff had normal range of motion and strength upon examination, and denied muscle weakness. The third record is an appointment with a pain specialist, dated October 8, 2020, stating Plaintiff "walks with antalgic gait but is able to ambulate without assistance." (AR 1111.) The ALJ found these records contained contradictory findings concerning Plaintiff's ability to ambulate, and his strength, sensation, and reflexes that are "not fully consistent" with Butler's opinion. (AR 23.)

The ALJ does not expressly specify the portions of the opinion that are inconsistent with these records. However, it is apparent that the records contrast with Butler's opinion that Plaintiff is limited in his ability to lift and carry only ten pounds occasionally, can stand and walk about two hours per day, required unscheduled breaks due to muscle weakness, and can never perform most exertional activities. (AR 1170-1171.) The ALJ identified those portions of Butler's opinion in his decision. (AR 23.) Thus, the ALJ's reasoning is easily discernable and the Court finds the ALJ's conclusion that Butler's opinion is "not fully consistent" with the record is supported by substantial evidence. *Molina*, 674 F.3d at 1121 ("Even when an agency explains its decision with less than ideal clarity, we must uphold it if the agency's path may reasonably be discerned.").

Next, the ALJ cited two records reporting Plaintiff exaggerated symptoms during a physical exam and had no significant loss of function. (AR 23) (citing 288; 886-888.) While the ALJ again did not expressly identify the portions of Butler's opinion he found to be inconsistent with these records, the Court finds the ALJ's reasoning is easily

discernable. *Molina*, 674 F.3d at 1121. Both of these records lend some support to the ALJ's conclusion that Butler's opinion was inconsistent with other treatment notes. The record finding exaggeration of symptoms during a physical exam endorses the ALJ's conclusion that the marked physical limitations opined by Butler were inconsistent with other evidence in the record. (AR 23.)

The second record, a January 28, 2020 treatment note from Brent Greenwald, MD, reported Plaintiff's neck conditions resulted in no loss in function, and caused only intermittent neck and arm discomfort addressed with conservative treatments. (AR 886-887.) Greenwald's findings are inconsistent with Butler's opinion that Plaintiff's cervical radiculopathy limited his ability to perform all postural and manipulative activities. (AR 1171-72.) The ALJ specifically noted Butler's finding that Plaintiff can never perform most exertional activities. (AR 23.) Thus, Greenwald's treatment note supports the ALJ's determination that Butler's opinion was inconsistent with the record.

For these reasons, the Court finds the ALJ's evaluation of the consistency factor is supported by substantial evidence. However, because remand is necessary for other reasons, the ALJ should reevaluate the opinion evidence on remand and explain the persuasiveness of the opinion evidence based on the supportability and consistency factors.

As to Plaintiff's argument that the ALJ erred in failing to consider the other persuasiveness factors contained in 20 C.F.R. § 404.1520c(b)(3)-(5), the Court finds no error. (Dkt. 15 at 17.) Although the extent of the treatment relationship is a relevant factor to the persuasiveness of a medical opinion, the ALJ was not required to explain how he

considered the nature and extent of the treatment relationship unless there are two equally persuasive but differing medical opinions. 20 C.F.R. § 404.1520c(b). That was not the case here, as the ALJ did not find the opinions equally persuasive. Thus, the ALJ was not required to address the other persuasiveness factors and did not error in declining to do so. *See Woods*, 32 F.4th at 787.

Further, the regulations no longer distinguish between the opinions of treating physicians, examining physicians, and non-examining physicians. *See Woods*, 32 F.4th at 792 ("The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant."). To the extent that Plaintiff contends that Butler's opinion should be afforded a greater weight than the state agency medical consultants simply because Butler was a treating or examining physician, that argument is unavailing.

## CONCLUSION

Based on the foregoing, the Court finds the Commissioner's decision is not supported by substantial evidence and Plaintiff has met his burden of establishing harmful error. The Court recommends that the Commissioner's decision be remanded.

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. *Harman v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *Id.* at

1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings."). However, where the circumstances of the case suggest that further administrative review could remedy the Commissioner's errors, remand is appropriate. *McLeod v. Astrue*, 640 F.3d 881, 888 (9th Cir. 2011); *Harman*, 211 F.3d at 1179-81. In general, when the Court reverses an ALJ's decision "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004).

The circumstances presented in this case suggest that further administrative review could remedy the Commissioner's errors, and there are serious doubts as to whether Plaintiff is in fact disabled within the meaning of the Social Security Act. *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014); *McLeod*, 640 F.3d at 888; *Harman*, 211 F.3d at 1179-81. Accordingly, the Court will recommend remand to the Commissioner for further proceedings.

## RECOMMENDATION

NOW THEREFORE IT IS HEREBY RECOMMENDED that:

1.      The decision of the Commissioner of Social Security be **REVERSED**;

2.      This action be **REMANDED** to the Commissioner for further proceedings consistent with this opinion;

3.      The Remand shall be considered a "sentence four remand," consistent with 42 U.S.C. § 405(g) and *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002); and

4.      Judgment be **ENTERED** in favor of Plaintiff.

**REPORT AND RECOMMENDATION - 31**

Written objections to this Report and Recommendation must be filed within fourteen (14) days pursuant to 28 U.S.C. § 636(b)(1) and Dist. Idaho L. Rule 72.1(b), or as a result of failing to do so, that party may waive the right to raise factual and/or legal objections to the United States Court of Appeals for the Ninth Circuit.

DATED: February 6, 2023

Honorable Debora K. Grasham
United States Magistrate Judge